UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAVI KONDAPALLI,

      Appellant,

v.                                      Lead Case No. 8:15-cv-1635-EAK

RONALD WILLIAM DEMASI,

      Appellee.

_____/

RONALD WILLIAM DEMASI,

      Cross-Appellant,

v.                                      Consol. Case No. 8:15-cv-1744-EAK

RAVI KONDAPALLI,

      Cross-Appellee,

_____/

## ORDER

These consolidated bankruptcy appeals require the Court to determine whether a state-court judgment and an unliquidated claim for attorney fees fall within the fraud exception to discharge, 11 U.S.C. § 523(a)(2).  For the reasons that follow, the Court affirms the bankruptcy court's determination that the state-court judgment is non-dischargeable under § 523(a)(2).  However, the Court reverses the bankruptcy court's determination that the unliquidated claim for attorney fees does not fall within the fraud exception.

I.      **BACKGROUND**

Ravi Kondapalli, M.D. and the debtor, Ronald William DeMasi, M.D., were members

of Gulf Coast Digestive Health Center, PL ("GCDH"), a Florida professional limited liability company. (Dkt. # 5-4, "Adv. Compl.," ¶ 8). In 2010, Kondapalli, by and on behalf of GCDH, sued DeMasi is state court. (Id. at ¶ 3). On December 7, 2012, Circuit Judge Nancy Donnellan entered an amended final judgment against DeMasi on claims for fraud, breach of an operating agreement, and breach of the duties of loyalty, care, and good faith. (Id. at ¶ 5 & Exh. A).

In connection with the fraud claim, Judge Donnellan determined that DeMasi made both material omissions and intentional misrepresentations. (Adv. Compl., Exh. A, ¶ 114). Specifically, DeMasi proposed that GCDH use Surgical Synergies, Inc. ("SSI") to develop and manage GCDH, but he failed to disclose that he had a financial interest in SSI, by way of his role in an SSI subsidiary. (Id.). In fact, shortly before GCDH entered into a management agreement with SSI, DeMasi affirmatively denied any interest in SSI. (Id. at ¶ 116). The following year, after auditors confirmed that SSI was deficient in its billing and collection practices, DeMasi falsely reported that SSI would sue if GCDH terminated SSI's management agreement. (Id. at ¶ 117). Judge Donnellan found that DeMasi's "fraudulent misrepresentations and failure to disclose were the proximate cause of damages to [GCDH]." (Id. at ¶ 118). Judge Donnellan based her rulings as to the remaining claims, in part, on the same misrepresentations and omissions. (Id. at ¶¶ 91, 99, 105, 110).

Judge Donnellan entered judgment against DeMasi for $411,428.93, which included billing and management fees paid to SSI, accounting and legal fees relating to the SSI's termination, and damages relating to the repossession of medical equipment due to SSI's poor performance. (Adv. Compl., ¶ 6 & Exh. B). Judge Donnellan also specified that Kondapalli was entitled to reasonable attorney fees, with the amount to be determined at

a future hearing.  (Id. at ¶ 5).

On January 2, 2013, Judge Donnellan granted DeMasi's motion for leave to deposit funds into the court registry, requiring DeMasi to pay only half the judgment amount.  (Adv. Compl., ¶ 8 & Exh. C).  Judge Donnellan reasoned that DeMasi and Kondapalli were the only remaining shareholders of GCDH and that the net proceeds would be divided between the two shareholders.  (Id.).  Although Kondapalli claimed entitlement to all proceeds, Judge Donnellan concluded that requiring DeMasi to pay half of the net proceeds "may be the only foreseeable way to end this protracted litigation."  (Id.)  Both Kondapalli and DeMasi appealed the state-court judgment.  (Id. at ¶ 9).

DeMasi filed for Chapter 11 bankruptcy relief.  Kondapalli, individually and on behalf of GCDH, filed an adversary complaint to determine the non-dischargeability of DeMasi's debt, pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).  In particular, the adversary complaint alleged a liquidated claim in the amount of $205,714.47, representing Kondapalli's half of the state-court judgment, and an unliquidated claim for attorney fees in the amount of at least $361,698.77.  (Adv. Compl., ¶ 11).

DeMasi moved to dismiss the adversary complaint.  (Dkt. # 5-23).  The bankruptcy court held that Kondapalli failed to state a claim under §§ 523(a)(4) and (6).  (Dkt. # 5-9).  The bankruptcy court also dismissed the complaint to the extent it sought to determine that the unliquidated claim for attorney fees was non-dischargeable.  (Id. at  pp. 5-6).  Kondapalli appeals that ruling.  (Dkt. # 1).

The parties filed cross-motions for summary judgment on Kondapalli's remaining claim under the fraud exception to discharge, § 523(a)(2).  (Dkts. ## 20-12, 20-18).  After determining that Judge Donnellan's judgment was entitled to preclusive effect, the

bankruptcy court held that the state-court judgment was non-dischargeable under § 523(a)(2) due to DeMasi's fraud.   (Dkt. # 5-24).   Accordingly, the bankruptcy court entered final judgment in the adversary proceeding on a principal amount of $205,714.47 plus post-judgment interest.  (Dkt. # 5-2).  DeMasi cross-appeals that ruling.  (Dkt. # 20-2).

## II.   DISCUSSION

The Court has jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a)(1) because the parties appeal from a final judgment in an adversary proceeding.  In re Donovan, 532 F.3d 1134, 1136 (11th Cir. 2008).  The Court reviews the bankruptcy court's legal conclusions de novo.  In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009).

### A.   DeMasi's appeal regarding the dischargeability of the state-court judgment under § 523(a)(2)

Section 523(a) excepts specific categories of debt from discharge.  Relevant to this appeal, no discharge is available for "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2).  This exception embodies a basic policy in the Bankruptcy Code "of affording relief only to an honest but unfortunate debtor."  Cohen v. de la Cruz, 523 U.S. 213, 218 (1998) (internal quotation marks omitted).

In the bankruptcy court, Kondapalli argued that the principle of collateral estoppel prevented DeMasi from re-litigating whether he committed fraud.  The bankruptcy court determined that the state-court judgment was entitled to preclusive effect because the fraud issue was fully litigated and it was a critical part of the judgment. The bankruptcy court also determined that the other elements of § 523(a)(2) were satisfied — in particular, the bankruptcy court held that DeMasi "obtained by" fraud "money, property, services, or . . . credit."  DeMasi challenges both rulings.

4

### 1. Application of collateral estoppel

The principle of collateral estoppel, or issue preclusion, bars re-litigation of issues previously decided in a judicial proceeding "if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993) (quoting Allen v. McCurry, 449 U.S. 90, 95 (1980)).  Collateral estoppel may be applied offensively, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979), but "a court must take special care to ensure that the defendant had a full and fair opportunity to litigate the issue in the other proceeding," Matter of McWhorter, 887 F.2d 1564, 1567 (11th Cir. 1989).

When a prior judgment is rendered by a state court, the law of that state is applied to determine the judgment's preclusive effect.  In re St. Laurent, 991 F.2d at 675–76. Florida law requires that:

> (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

Id. at 676.  Florida also requires mutuality of parties.  Quinn v. Monroe County, 330 F.3d 1320, 1330 (11th Cir. 2003).  DeMasi argues that the state-court judgment fails to satisfy the first three elements.

With respect to the identity of the issues, the Eleventh Circuit has determined that the issue of fraud under § 523(a)(2) is identical to the issue of fraud under Florida law.  In re St. Laurent, 991 F.2d at 676.  Under § 523(a)(2), a creditor must demonstrate that: (1) a debtor made a false representation with intent to deceive the creditor, (2) the creditor relied

on the representation, (3) the creditor's reliance was reasonable, and (4) the creditor sustained loss as a result of the representation. In re St. Laurent, 991 F.2d at 676. Likewise, under Florida law, "a plaintiff must establish that the defendant made a deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff." Id. (internal quotation marks omitted).

Notwithstanding this authority, DeMasi argues that the issues under § 523(a)(2) and Florida law are not identical because Florida courts do not require that a debtor gain a benefit from the fraud. In a related argument, DeMasi maintains that the issue of whether he received a benefit was not "actually litigated" in state court.

The Court is not persuaded. The issue of whether DeMasi committed fraud was fully litigated in state court. Following a trial, Judge Donnellan entered a 38-page judgment, which included extensive and detailed findings of fact and specific conclusions of law supporting her determination that DeMasi's fraud caused damages to GCDH. (Dkt. # 5-4, pp. 22–28, 47–49). As the bankruptcy court observed, it is not surprising that the state court did not address the additional question of whether DeMasi received a benefit from his fraud because that issue comes into play only under the specific language of § 523(a)(2), which requires that a debtor "obtain" something by his fraud. As a result, the bankruptcy court properly made that determination in the first instance, in a thorough and well-reasoned analysis, based on the facts adduced in state court. (Dkt. # 5-24, pp. 14–24); In re St. Laurent, 991 F.2d at 676 (holding that, although collateral estoppel may be applied to a state-court fraud judgment, "the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability."); In re Bilzerian, 100 F.3d 886, 891 n.9 (11th Cir. 1996)

6

(assessing whether a debtor obtained a benefit from his fraud, under § 523(a)(2), based on the findings of fact from a prior action); In re Halpern, 810 F.2d 1061, 1064 (11th Cir. 1987) (affording detailed factual findings preclusive effect in assessing dischargeability under § 523(a)(2)).

Alternatively, DeMasi argues that Judge Donnellan's findings of fraud were not "critical and necessary" to the state-court judgment.  DeMasi correctly notes that the original judgment amount of $411,428.93 was described as "damages proven for Counts I through V," without differentiation between the counts.  (Dkt. # 5-4, p. 54).  As a result, DeMasi contends that no element of damages is traceable to the fraud claim.

Again, the Court is not persuaded.  The requirement that an issue be "critical and necessary" has two purposes.  First, "an immaterial issue may not have been afforded the same careful deliberation and analysis as an issue necessary to the judgment."  Hicks v. Quaker Oats Co., 662 F.2d 1158, 1168 (5th Cir. 1981).  Second, "a decision on an immaterial issue provides the losing party with no incentive to contest an erroneous decision by appeal."  Id.  When a judgment is based on an alternative ground, or when a jury enters a general verdict,  "it is impossible to determine with certainty what issues were in fact adjudicated" and the "critical and necessary" element is not satisfied.  In re St. Laurent, 991 F.2d at 676; Seaboard Coast Line R. Co. v. Indus. Contracting Co., 260 So. 2d 860, 865 (Fla. 4th DCA 1972).

The state-court judgment does not present a situation in which it is "impossible" to determine what grounds formed the basis for the judgment.  Judge Donnellan not only expressly held that "DeMasi's fraudulent misrepresentations and failure to disclose were the proximate cause of damages to Gulf Coast Digestive," the thorough findings in support

of that determination demonstrate that the issue of DeMasi's fraud was afforded "careful deliberation and analysis." Hicks, 662 F.2d at 1168; (Dkt. # 5-4, pp. 22–28, 47–49). In addition, DeMasi had every incentive to appeal the rulings regarding his misrepresentations and omissions because those acts of fraud were also considered in the other counts on which judgment was entered. Hicks, 662 F.2d at 1168; (Id. at ¶¶ 91, 99, 105, 110).

DeMasi further argues that, in order to obtain a judgment for common-law fraud in Florida, a plaintiff must prove that any damages are separate from damages sought under other theories. DeMasi maintains that Kondapalli requested the same damages for both fraud and breach-of-contract in his state-court complaint (Dkt. # 5-11, pp. 29, 32) and therefore could not have obtained a valid fraud judgment under Florida law.

Assuming, arguendo, that DeMasi is correct in his statement of Florida law — which Kondapalli disputes — whether a judgment is erroneous on the merits is not an element of collateral estoppel. For the reasons discussed above, the issues related to DeMasi's fraud were identical to the issues considered by Judge Donnellan, the issues were "actually litigated" in state court, and the issues were "critical and necessary" to the judgment. In re Bilzerian, 100 F.3d at 892. The bankruptcy court therefore properly applied collateral estoppel to give the state-court judgment preclusive effect as to the legal and factual issues relating to DeMasi's fraud.

## 2. Receipt of benefits

The remaining issue in DeMasi's appeal is whether the bankruptcy court erred in determining that DeMasi "obtained by" fraud any money, property, services, or credit within the meaning of § 523(a)(2). As DeMasi acknowledges, the Eleventh Circuit holds that a debtor need not personally obtain the fruits of his fraud. Rather, the Eleventh Circuit has

adopted the "receipt of benefits" test, which requires that a debtor merely receive a benefit — direct or indirect — from money, property, services, or credit obtained by fraud.  In re Bilzerian, 100 F.3d at 890-91.  DeMasi denies receiving any benefit, either direct or indirect, as a result of his conduct toward Kondapalli and GCDH.

The Court finds that the bankruptcy court correctly determined that DeMasi obtained a benefit from his fraud.[1]  At a minimum, DeMasi's misrepresentations and omissions to GCDH and its members allowed him to secure the initial and ongoing payment of management fees from GCDH to SSI.  (See e.g., Adv. Compl., Exh. A, ¶¶ 60–61, 66–67,114–18; Exh. B, ¶ 3).  Even if DeMasi never obtained a profit for himself, by promoting and securing SSI's financial interests, DeMasi promoted his own financial interests because of his relationship to SSI and SSI's subsidiary.  (Id. at Exh. A, ¶¶ 61, 67). DeMasi therefore obtained an indirect benefit from his fraud.  See In re Ashley, 903 F.2d 599, 604 (9th Cir. 1990) (holding that a debtor's conduct in arranging fraudulently-obtained loans, which was part of a business plan to gain a foothold in the machine-shop industry, conferred the requisite benefit because it "placed him in a position to benefit from any infusion of capital to that enterprise"); accord In re Cramblitt, No. 09-20324DK, 2010 WL 3245387, at *5 (Bankr. D. Md. Aug. 17, 2010); cf. In Re Rountree, 478 F.3d 215, 222 (4th Cir. 2007) (holding that a fraud judgment was dischargeable where it was undisputed that the debtor "obtained nothing directly or indirectly" as a result of the fraud).

Based on the foregoing, the Court affirms the bankruptcy court's determination that

---

[1] Because the bankruptcy court did not err in applying the receipt-of-benefits test, the Court does not reach Kondapalli's argument that a creditor is not required to demonstrate the receipt of any benefit.  See, e.g., Muegler v. Bening, 413 F.3d 980, 983 (9th Cir. 2005).

the state-court judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

## B.   Kondapalli's appeal regarding the dischargeability of the attorney fees

Kondapalli appeals the bankruptcy court's dismissal of the adversary complaint to the extent it sought to determine that the attorney fees were non-dischargeable.  Pursuant to Federal Rule of Civil Procedure 8(a)(2), which is made applicable to adversary proceedings by Bankruptcy Rule 7008(a), Kondapalli is required to provide "a short and plain statement" of his claim, sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In Cohen v. de la Cruz, the Supreme Court held that § 523(a)(2) excepts from discharge not only the specific value of the money, property, services, or credit fraudulently obtained, but "any debt" arising from, resulting from, or traceable to, the fraudulent acquisition of money, property, services, or credit.  523 U.S. at 215, 219, 221.  Thus, under the facts in Cohen, once it was determined that the debtor had fraudulently obtained $31,382.50 in rent payments, "[h]is full liability traceable to that sum" fell within the fraud exception, including treble damages and attorney fees that were awarded pursuant to the New Jersey Consumer Fraud Act.  523 U.S. at 215, 219.

Kondapalli's claim for attorney fees is based on two grounds: (1) a provision in the GCDH operating agreement, and (2) former Fla. Stat. § 608.601, which allows a member of a limited liability company to recover reasonable expenses incurred in successfully prosecuting a derivative action.   (Adv. Compl., ¶ 10 & Exh. D)  The bankruptcy court dismissed the claim for attorney fees for two reasons.  First, to the extent that Kondapalli sought to recover fees under the GCDH operating agreement, that recovery was unrelated to the fraud claim.  Second, to the extent Kondapalli sought fees under Fla. Stat.

§ 608.601(6), the bankruptcy court held that those fees were not for DeMasi's fraud, "but rather for Kondapalli bringing the clam on Gulf Coast Digestive's behalf." (Dkt. # 5-9, p. 6).

Taking the inferences in Kondapalli's favor, the Court finds that Kondapalli stated a plausible claim that the attorney fees were non-dischargeable. Kondapalli prosecuted a derivative action based on DeMasi's fraud. The derivative action not only included a distinct fraud claim, the other counts were based, in part, on DeMasi's misrepresentations and omissions. Kondapalli was successful in prosecuting the derivative action, implicating Fla. Stat. § 608.601(6). (Adv. Compl., ¶¶ 4–6). Any expenses awarded pursuant to § 608.601(6) are therefore "traceable to" DeMasi's fraud. Cohen, 523 U.S. at 219.

DeMasi attempts to distinguish Cohen by pointing out that the New Jersey Consumer Fraud Act, which was the basis for attorney fees in Cohen, specifically provided for attorney fees, while Florida law does not provide a similar entitlement for common law fraud claims. Nonetheless, Cohen broadly instructs that once fraud is proven, "any liability" arising from the fraud is non-dischargeable, including "attorneys fees and costs of suit associated with establishing fraud." 523 U.S. at 223. That conclusion is consistent with the policy behind § 523(a)(2), which is intended to ensure that victims of a debtor's fraud are "made whole," including recovery of attorney fees incurred in establishing the fraud. Id. Because Kondapalli incurred the fees in establishing DeMasi fraud, he adequately alleges a liability for attorney fees that is "traceable to" DeMasi's fraud. See In re Charles, No. 6:11-BK-14989, 2014 WL 2930973, at *9–10 (Bankr. M.D. Fla. June 27, 2014) (holding that fees imposed as a sanction under Fla. Stat. § 57.105 for fraud on the court and for filing an action without any legal basis were non-dischargeable under § 523(a)(6)); In re

Auffant, 268 B.R. 689, 696 (Bankr. M.D. Fla. 2001) (holding that attorney fees to which creditor was entitled under Florida's offer-of-judgment statute were non-dischargeable under § 523(a)(6)); see also TranS. Fin. Corp. of Fla. v. Johnson, 931 F.2d 1505, 1506–09 (11th Cir. 1991) (holding that attorney fees were non-dischargeable under § 523(a)(2) where the fees were provided for in an enforceable contract).

DeMasi raises two additional points. DeMasi contends that Kondapalli failed to plead any entitlement to fees under § 608.601(6) in the state-court action, as required by Florida law. Second, DeMasi argues that § 608.601(6) is inapplicable because the judgment was rendered for Kondapalli's benefit only, and § 608.601(6) specifically provides that it "does not apply to any relief rendered for the benefit of injured members only."

DeMasi's arguments relate to whether there is a valid "debt" for attorney's fees. The bankruptcy court did not reach this issue, and, even if the debt were legitimately in dispute, that dispute would not prevent Kondapalli from stating a claim for non-dischargeability. A "debt" is defined as "liability on a claim," and a "claim" means a "right to payment, whether or not such right is reduced to judgment, . . . unliquidated, [or] disputed." 11 U.S.C. § 101(5)(A), (12). Based on his success in the derivative action, Kondapalli has pleaded a plausible basis for DeMasi's liability on a disputed claim. In re Black, 95 B.R. 819, 823 (Bankr. M.D. Fla. 1989).

For the above reasons, the Court holds that the bankruptcy court erred in dismissing Kondapalli's adversary complaint to the extent the complaint alleged that the attorney fees were non-dischargeable under 11 U.S.C. § 523(a)(2).

Based on the foregoing, it is **ORDERED**:

(1)     The Clerk is directed to enter judgment as follows:

The final judgment of the bankruptcy court (Dkt. 72) is **REVERSED IN PART**, as to the bankruptcy court's dismissal of the claim in the adversary complaint alleging that the attorney fees are non-dischargeable under 11 U.S.C. § 523(a)(2).  The final judgment is **AFFIRMED IN PART**, as to the bankruptcy court's determination that the principal amount of $205,714.47 plus post-judgment interest accruing thereon, is non-dischargeable under 11 U.S.C. § 523(a)(2).  The case is **REMANDED** to the bankruptcy court for further proceedings consistent with this Order.

(2)    Pursuant to Bankruptcy Rule 8024, upon entry of judgment, the Clerk is directed to immediately transmit a notice of the entry to each party, to the United States trustee, if any, and to the bankruptcy clerk, together with a copy of this order.  The Clerk shall immediately note the date of such transmission on the docket.

(3)    The Clerk is directed to terminate this appeal and the consolidated cross-appeal (Case No. 8:15-cv-1744).

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this _11th_ day of February, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of record